**WORLD SAVINGS BANK, F.S.B., Appellant,**

v.

**Carol GANTT, Appellee.**

No. 14–05–00833–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 17, 2008.

Joel William Shaddox, Irving, Richard Earl Griffin, Alan Brandt Daughtry, Houston, for appellant.

Stewart A. Feldman, Susan Frances Hatcher, Houston, for appellee.

Panel consists of Justices YATES and ANDERSON, and Senior Justice SEARS.*

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, World Savings Bank, F.S.B. ("the Bank"), appeals a summary judgment in favor of appellee, Carol Gantt. The Bank raises two issues on appeal. First, the Bank claims the trial court erred in granting Carol's summary judgment and finding the Bank's mortgage subject to a canceled lis pendens. Second, the Bank claims it conclusively established its status as a bona fide lender/mortgagee and, therefore, the trial court erred in denying its summary judgment. We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1995, Jerry Gantt sued Carol Gantt for divorce. While still married to Carol, Jerry bought his mistress, Janice Lisa Foster, a home located in Houston ("the Property"). Title to the Property was held in Foster's name. During the divorce, Carol alleged Jerry had fraudulently transferred the Property to Foster using community assets of the marital estate. Because of the dispute over the Property, Carol filed a lis pendens notice

on February 15, 1996, and she filed a second lis pendens notice on March 20, 1996. Both notices stated that title to the Property appeared in the name of Foster and that title and ownership was in dispute. The notices also stated the name, address, and phone number of Carol's attorney in case people wanted to obtain additional information. Both lis pendens notices were properly recorded in the Harris County real property records.

On June 20, 1996, trial in the divorce action between Jerry and Carol commenced, and on October 30, 1996, the trial court rendered a Modified Final Judgment and Decree of Divorce dismissing all of Carol's claims against Foster concerning the Property. The trial court stated "[a]s to Janice Lisa Foster ... any action causes (sic) brought against [her] in this matter are dismissed with prejudice." On motion by Foster, the trial judge signed a cancellation order on November 5, 1996, canceling the two lis pendens notices previously filed by Carol. The cancellation order was properly filed in the Harris County real property records on December 5, 1996. The order provided the following:

> The Court took notice of its file which shows that the Court has signed a final decree in this cause not involving title to the real estate described in the Lis Pendens and further described below. The final decree signed previously, and the final decree signed on or about October 30, 1996, dismisses all causes of action against JANICE LISA FOSTER, the fee simple owner of the below described real property, with prejudice. The Court is therefore of the opinion that the Lis Pendens should be cancelled.

After the trial court's judgment, Carol filed a Motion for Clarification of Judg-

* Senior Justice Ross A. Sears sitting by assign- ment

ment, Motion for New Trial (Restated), Motion for Severance, and Request for Rehearing on Motion to Cancel Lis Pendens, which the court denied on June 4, 1997. Carol then properly perfected her appeal of the Modified Final Judgment and Decree of Divorce, and the appeal was transferred to the Thirteenth District Court of Appeals. Carol did not file an appeal of the cancellation order of the lis pendens nor did she file a stay or supersedes bond.

On August 12, 1999, the Thirteenth District Court of Appeals rendered a decision in Carol's appeal. The appellate court held the trial court erred by not submitting Carol's civil conspiracy cause of action against Foster. The court reversed the judgment of the trial court to Carol's claims against Foster and remanded that particular claim for trial.

Approximately five months after the court's decision, on January 6, 2000, Jerry and Foster, who were married at this time, went to the Bank and obtained a mortgage on the Property, secured by a deed of trust. Chicago Title Insurance Company ("Chicago Title") issued a title policy to the Bank. The policy issued by Chicago Title did not reflect the Property was encumbered by any lis pendens claims by Carol. The Bank and Chicago Title relied on the cancellation order signed by the court, and neither contacted Carol's attorney for additional information.

Due to the Thirteenth Court's opinion requiring a remand, the Gantt divorce was tried once again, and on September 9, 2002, the trial court found "Jerry Gantt fraudulently transferred the [Property] to Lisa Foster." The court stated the following:

> It is further ORDERED ADJUDGED AND DECREED that the transfer of the "Property" (defined herein as the house and real property located at 428 West 34th Street, Houston, Texas) to Lisa Foster Gantt by deed dated April 4, 1991, is null and void as to the former community estate of Jerry and Carol Gantt.

The trial court granted Carol a money judgment against both Jerry and Foster and ordered that she could levy execution of the judgments against the Property.

Accordingly, in October 2003, the trial court appointed Ray Lemmon as a Receiver to sell the Property. Lemmon entered into a contract to sell the Property for $340,000, and the trial court confirmed the sale on November 2, 2004. Carol received a final account on November 24, 2004, and learned Lemmon used $210,352.58 of the proceeds from the sale to pay off the Bank for the mortgage on the Property. Carol objected to this payment claiming the Bank had no right to any proceeds from the sale of the Property because the conveyance of the Property to Foster had been deemed null and void.

On December 28, 2004, Carol requested a show cause hearing requiring the Bank to appear in court to determine whether it should be held in contempt for refusing to return the money to Carol. That same day, Carol filed a Supplemental Amended Petition and Application for Temporary Injunction and Permanent Injunction adding the Bank as a party. Carol alleged a cause of action for trespass to try title. On May 16, 2005, Carol filed a Motion for Summary Judgment claiming the Bank issued the mortgage subject to two lis pendens notices and the reversal of the trial court by the Thirteenth Court of Appeals. In response, the Bank filed a competing Motion for Summary Judgment arguing the trial judge entered a cancellation notice regarding the two lis pendens and raising the affirmative defenses of bona fide lender/mortgagee and estoppel.

The trial court granted Carol's summary judgment and ordered the Bank to pay Carol the $210,352.58 it received from the sale of the Property. The Bank appealed the judgment, but the judgment was interlocutory since the trial court had not yet addressed the claims against Jerry, Foster, and Lemmon. Accordingly, the Bank obtained a severance of its claims, and filed an Amended Notice of Appeal from the Summary Judgment in the severed cause.

## DISCUSSION

### A. Standard of Review

Under the traditional summary judgment standard of review, a movant has the burden to show at the trial level that there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and we make all reasonable inferences in his favor. *Id.* We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). A movant is entitled to summary judgment only if he conclusively proves all essential elements of his claim. *Johnston v. Crook,* 93 S.W.3d 263, 273 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (citing *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986)).

When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000). When the trial court grants one motion and denies the other,[1] we review the summary judgment evidence presented by both parties and determine all questions presented. *Id.* The reviewing court should render the judgment that the trial court should have rendered or reverse and remand if neither party has met its summary judgment burden. *Id.*

### B. Did the Trial Court Err in Granting Carol's Motion for Summary Judgment?

In its first issue, the Bank argues it was entitled to rely on an order from the trial court canceling the lis pendens because nothing else in the chain of title indicated a continuing dispute over the title. The Bank argues the cancelled lis pendens was not effective to impute notice to it, despite the appellate court's reversal of the case, because Carol did nothing further to provide notice of her appeal.

Carol argues the trial court did not err because the Bank failed to ensure the validity of the title by checking the real property records against the referenced court records. Carol claims because of the existence of the lis pendens notices, the rights of the Bank are derivative of Jerry and Foster, therefore, the Bank acquired no better title than Jerry or Foster. Fur-

---

1. There is not an order by the trial judge specifically denying the Bank's summary judgment motion; however, we determine the Bank's summary judgment was implicitly denied when the trial court issued an order granting Carol's summary judgment. *See* Tex.R.App. P. 33.1(a)(2)(A). The Bank's motion for summary judgment was filed in conjunction with its response to Carol's summary judgment. The trial judge's order granting

Carol's summary judgment reads as follows: "After considering Carol Gantt's Motion for Summary Judgment, the pleadings, the response, the affidavits, and other evidence on file, the Court **GRANTS** Plaintiff, Carol Gantt's, Motion for Summary Judgment." This language sufficiently states the trial court considered the Bank's motion and impliedly denied it.

thermore, Carol argues the Bank had both actual and constructive notice of the lis pendens and the continuing litigation.

### 1. Analysis

 Under the Texas Property Code Section 12.007, a party to an action involving title to real property may file a lis pendens notice with the county clerk where the property is located. *See* Tex. Prop.Code Ann. § 12.007(a) (Vernon 1984). A lis pendens' ultimate effect is to prevent either party to the litigation from alienating the property in dispute, so as to affect the rights of his opponent. *Black v. Burd,* 255 S.W.2d 553, 555 (Tex.Civ.App.-Fort Worth 1953, writ ref'd n.r.e.). Under the rule, one acquiring an interest in property from a party pending litigation in regard to it is bound by the result. *Id.* One who buys from a party to an action during its pendency is a purchaser pendente lite, and a judgment ultimately rendered will not only affect him with notice of the adverse claim, but will bind him as will it a party to the record. *Rio Bravo Oil Co. v. Hebert,* 130 Tex. 1, 106 S.W.2d 242, 247 (1937). A filed lis pendens is constructive notice of the underlying lawsuit, and a prospective buyer is on notice that he acquires any interest subject to the outcome of the pending litigation. *Gene Hill Equip. Co. v. Merryman,* 771 S.W.2d 207, 209 (Tex. App.-Austin 1989, no writ).

However, this case is not as simple as a filed lis pendens notice. In this case, the trial court ordered a cancellation of both lis pendens notices, and the order was filed in the Harris County real property records. The Bank then relied on the cancellation order without any further inquiry and granted a mortgage on the Property, which was still the subject of ongoing litigation. The Bank now argues it should be allowed to rely on the cancellation order filed in the records because Carol failed to provide any further notice of her appeal.

Neither of the parties cite to any Texas law pertaining to this particular circumstance. After our own independent research, we were also unable to find any Texas law regarding this specific issue; therefore, we must rely on the law of other Texas cases we find persuasive.

We believe the ultimate issue in this case centers around the question of actual notice. Under Texas law, a person is charged with a duty to inquire when that person searches the real property records and any description, recital of fact, reference to other documents, or any other disclosure suggests that as a matter of prudence further inquiry would disclose the real situation. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 908 (Tex.1982) (holding that a reference to a 1968 operating agreement in an assignment charged a third party with the duty of inspecting the agreement); *Housman v. Horn,* 157 S.W. 1172, 1173-74 (Tex.Civ. App.-Dallas 1913, no writ) (holding a deed which obligated one party to pay certain negotiable notes charged that party with a duty to inspect the notes and held that party responsible for all recitals in the notes).

Furthermore, the facts in *Hexter v. Pratt* are similar to the facts in our case, and in *Hexter* the court used similar language regarding the concept of inquiry and actual notice. *Hexter v. Pratt,* 283 S.W. 653, 654-59 (Tex.Civ.App.-Dallas 1926), *aff'd,* 10 S.W.2d 692 (Tex. Comm'n App.1928, judgm't adopted). We find *Hexter* persuasive.

In *Hexter,* Tennie Pratt held title to the property in controversy. *Id.* at 654. Clarence Pratt claimed title to the property and filed a lis pendens in the real property records. *Id.* The trial court ordered the case dismissed for want of prosecution on July 28, 1919. *Id.* at 657. On November

19, 1919, Tennie sought a loan from J.K. Hexter. *Id.* In negotiating the loan, Tennie gave Hexter an abstract of title which contained a copy of the lis pendens filed on each lot by Clarence and the order of dismissal by the trial court. *Id.* at 658. Hexter gave the abstract to his attorney who examined them and reported back. *Id.* The attorney and Hexter relied upon the order of dismissal to terminate the effect of the lis pendens, and Hexter gave Tennie the loan secured by a deed of trust on November 21, 1919. *Id.* On November 4, 1920, Clarence filed a motion to set aside the order of dismissal and reinstate the causes of action, which the trial court granted on November 16, 1920. *Id.* at 654–55.

On January 17, 1922, Hexter filed suit against both Tennie and Clarence to recover on the note and sought to foreclose on the land pursuant to the deed of trust. *Id.* at 655. In his answer, Clarence argued he was the owner of the lots Hexter sought to foreclose, and he argued Hexter had actual notice of his claim of title, therefore, Hexter was not an innocent lienholder for value. *Id.* Clarence further argued whatever rights Hexter acquired were those of a lis pendens creditor since the order of dismissal was void. *Id.* In response, Hexter argued he was a lien creditor for value and without notice of the claim of title by Clarence. *Id.* Hexter also argued the suits had been properly dismissed and the effect was the destruction of the lis pendens at the time he obtained the deed of trust. *Id.*

The trial court determined Hexter had actual notice of Clarence's claim of title and refused to allow the foreclosure. *Id.* at 654. Hexter appealed and the Dallas Court of Appeals affirmed the trial court. *Id.* at 659. The Dallas court only addressed one issue: Whether Hexter, before and at the time of the execution of the deed of trust in question, had actual knowledge of the existence of the facts constituting the claim of title asserted by Clarence or knowledge of such facts in reference to such claim sufficient to put a reasonably prudent man upon inquiry, which if pursued, would have disclosed to him the existence of the claim. *Id.* at 655. The court held that "although the lis pendens filed by [Clarence] had by reason of the dismissal of the consolidated suit ceased to be of effect as a lis pendens, as against the rights of [Hexter] acquired in the lots after [the] order of dismissal had been entered and before [the] cause was reinstated, knowledge of the contents of [the] lis pendens and the other recitals of fact in [the] abstract was sufficient to constitute actual notice of the existence of the facts constituting [Clarence's] claim of title." *Id.* at 659. The Court went on to say the filed lis pendens did not constitute constructive notice because of the dismissal order, but it did constitute actual notice because the facts stated in the lis pendens were undoubtedly sufficient to put Hexter on inquiry, and if such inquiry had been pursued, Hexter might have ascertained full knowledge of all the facts. *Id.* at 658.

This case was ultimately appealed to the Commission of Appeals of Texas, Section B, and that court affirmed the Dallas court's decision. *Hexter v. Pratt,* 10 S.W.2d 692, 694 (Tex. Comm'n App. 1928, judgm't adopted). The Commission determined no effort was made by the attorney nor by Hexter to inquire into the facts constituting the claim of Clarence; therefore, Hexter was not an innocent purchaser for value because he had notice of such facts as by the use of reasonable diligence he could have ascertained the extent of the claim and the rights of Clarence. *Id.* at 693.

As stated above, we believe the ultimate issue in this case is whether the Bank had notice of such facts as by the use of reasonable diligence it could have ascertained the extent of claims and rights of Carol.

Essentially, it must be determined whether the Bank can be charged with a duty to inquire and actual knowledge of the reversal by the Thirteenth Court of Appeals and the continuing dispute over the Property between Carol, Jerry, and Foster.

■ Carol argues the Bank had actual notice[2] of the claims despite the cancellation order because of the two previously filed lis pendens notices and the reversal by the Thirteenth Court of Appeals. Carol essentially argues the Bank was aware of the two previously filed lis pendens and chose not to inquire any further. However, it is unclear in the record exactly what documents and information the Bank had available when determining whether to grant Jerry and Foster the mortgage. The Bank states in its brief it retained Chicago Title in connection with the mortgage, and the policy issued by Chicago Title did not reflect the fact the Property was encumbered by any lis pendens. After reviewing the title policy included in the record, it contains nothing regarding the lis pendens filed on the property nor anything regarding the cancellation order. The Bank also stated as far as it knew, the lis pendens claims had been cancelled by order of the court. Robert Lechtenberg, a representative for the Bank, testified during a deposition that the Bank reviewed a preliminary title commitment produced by Chicago Title in connection with making the mortgage loan. Lechtenberg testified there were no references to any encumbrances on the preliminary title commitment that would have impaired the ability of the Bank to go forward with the mort-

gage. Lechtenberg also testified the Bank was not apprised of any notice of lis pendens on the property, and had it been apprised of such it would have contacted the title company to clear up the situation. Lechtenberg testified the Bank made no inquiry beyond the preliminary title commitment; however, this document is not included in the record, so we are unable to determine exactly what the preliminary report said regarding the lis pendens or the cancellation of the lis pendens. After reviewing the record and the briefs, it appears the Bank had some notice regarding the cancellation of the lis pendens, but it is unclear exactly what the Bank reviewed.

■ Actual notice is a question of fact. *Id.* at 693. Because of the conflicting evidence in this record, there is a genuine issue of material fact regarding what information and documents the Bank reviewed when granting the mortgage. Under this record, we cannot say Carol met her burden of proving as a matter of law the Bank was aware of enough facts to put a reasonably prudent man on inquiry. We believe this is a question for the jury. Therefore, we sustain the Bank's first issue and hold the trial court erred in granting Carol's motion for summary judgment.

## C. Did the Trial Court Err in Denying The Bank's Motion for Summary Judgment?

In its second issue, the Bank argues the trial court erred in denying its motion for summary judgment because the record conclusively establishes the Bank is a bona

---

**2.** Carol also argues the Bank had constructive knowledge of the previously filed lis pendens simply by virtue of the fact they were filed in the public records. While this is generally the rule regarding constructive notice, we find *Hexter* persuasive in this regard as well. *See Hexter,* 283 S.W. at 658. In *Hexter,* the court determined the trial court's dismissal order terminated the effect of the lis pendens and, therefore, the record did not show constructive notice to Hexter. *Id.* at 657–58. We find the same reasoning applicable in this situation. The cancellation order filed in the public records negates the possibility of constructive notice. *See id.* at 658.

fide lender/mortgagee. Carol responds to this argument by claiming the Bank cannot be considered a bona fide lender/mortgagee because it had notice of the lis pendens filed.

### 1. Analysis

 Status as a bona fide lender/mortgagee is obtained if the lender/mortgagee obtained an interest in the property in good faith, for value and without notice of the claim or interest of a third party. *Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 769 (Tex.1983). This point of error once again revolves around the central issue of actual notice. According to the discussion above, there is a genuine issue of material fact regarding whether the Bank can be charged with the duty to inquire and actual notice of Carol's claims. Therefore, we overrule the Bank's second issue and hold the trial court did not err in denying the Bank's motion for summary judgment.

### CONCLUSION

We reverse the trial court's decision granting Carol's summary judgment motion and affirm the trial court's decision denying the Bank's summary judgment motion. Because neither party has met its summary judgment burden, we reverse and remand for further proceedings consistent with this opinion.