

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-187-CR

JEFFREY EARL LEWIS                                                      APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Jeffrey Earl Lewis appeals the trial court's order that requires him to pay restitution as a result of his guilty plea to criminal mischief. In three issues, he contends that the evidence is legally and factually insufficient to support the restitution order. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

**Background Facts**

A Denton County grand jury indicted appellant for criminal mischief causing damage between $20,000 and $100,000, which is a third-degree felony.[2] The indictment alleged that between May 30, 2008 and June 3, 2008, appellant "did then and there intentionally or knowingly damage or destroy tangible property, to-wit: a residence . . . by removing countertops, appliances, cabinets, breaking windows, doors and damaging walls without the effective consent of Diane Barfield, the owner of said property."

Appellant pled guilty to class A misdemeanor criminal mischief.[3] In accordance with his plea, he received admonishments, waived statutory and constitutional rights, and judicially confessed that he understood the charge against him and that he was "GUILTY of the offense of LESSER-INCLUDED CRIMINAL MISCHIEF as alleged in the charging instrument." Appellant specifically agreed, "[T]he Court may consider my judicial confession as evidence in this case." The trial court placed him on two years' deferred adjudication with several expressed conditions, including paying restitution, and under the parties stipulation, the court left the issue of the restitution amount as "TBD" (to be determined).[4] After an evidentiary hearing, the trial court

---

[2] *See* Tex. Penal Code Ann. § 28.03(a), (b)(5) (Vernon Supp. 2009).

[3] *See id.* § 28.03(b)(3) (providing that criminal mischief is a class A misdemeanor when the amount of damage is between $500 and $1,500).

[4] As part of the stipulation, appellant agreed to not be held to a cap (based on the reduced offense that he pled guilty to) on the amount of restitution that the

ordered appellant to pay $55,000 at the rate of $2,600 per month. Appellant filed a motion for new trial and notice of this appeal.

## The Propriety of the Restitution Order

Each of appellant's three issues regard whether the evidence adequately supports the trial court's restitution order. The code of criminal procedure provides that "the court that sentences a defendant convicted of an offense may order the defendant to make restitution." Tex. Code Crim. Proc. Ann. art. 42.037(a) (Vernon Supp. 2009); *see* Tex. Const. art. I, § 30(b)(4); *Weir v. State*, 278 S.W.3d 364, 366–67 (Tex. Crim. App. 2009). In determining the amount of restitution, the court shall consider "the amount of the loss sustained by any victim" and "other factors the court deems appropriate." Tex. Code Crim. Proc. Ann. art. 42.037(c). "The court shall impose an order of restitution that is as fair as possible to the victim," and the "standard of proof is a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the prosecuting attorney." *Id.* art. 42.037(e), (k). If an offense results in damage, loss, or destruction of a victim's property, the trial court may order the defendant to return the property or, if the return of the property is impossible or inadequate, to pay the victim the greater of the value of the property on the date of the damage or "the value of the property on the date of sentencing, less the value of any part of the property that is returned on the date the property is returned." *Id.* art. 42.037(b)(1).

State could recover.

3

We review a trial court's decision to order restitution under an abuse of discretion standard. *See Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999); *Burris v. State*, 172 S.W.3d 75, 77 (Tex. App.—Fort Worth 2005, no pet.); *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd). An abuse of discretion occurs if the trial court acts without reference to any guiding rules or principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g). A trial court abuses its discretion when it sets restitution in an amount that is unjust or unsupported by facts.[5] *Campbell*, 5 S.W.3d at 696 (citing *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. [Panel Op.] 1980)); *see Burris*, 172 S.W.3d at 78 (explaining that "testimony from a . . . victim of the crime with personal knowledge of the amount of [damages] incurred . . . is adequate to support a restitution order"); *Knight v. State*, 635 S.W.2d 650, 652–53 (Tex. App.—Fort Worth 1982, no pet.). "A trial court may not order restitution for an offense for which the defendant is not criminally responsible." *Campbell*, 5 S.W.3d at 697.

The evidence presented at the restitution hearing establishes that in 2004, Joseph and Vlastie Marek sold a lakefront house in Denton County to appellant, but

---

[5] While whether there is sufficient evidence to support the trial court's decision is a relevant part of our abuse of discretion analysis, legal and factual sufficiency reviews are not equivalent to an abuse of discretion review. *See In re K.T.*, 107 S.W.3d 65, 74 (Tex. App.—San Antonio 2003, no pet.) (en banc) (stating that "the criminal abuse of discretion standard" is "divorced from evidentiary standards of legal and factual sufficiency"); *Allbright v. State*, 13 S.W.3d 817, 818 (Tex. App.—Fort Worth 2000, pet. ref'd).

4

the Mareks were beneficiaries of a deed of trust on the property because appellant was making mortgage payments to them.[6] At that time, the house "was totally habitable. It had all of its appliances, all of its innards. It was in working condition."

Appellant was contractually required to pay county taxes on the property, but in 2007, Vlastie's estate paid them. Appellant also eventually fell behind on his mortgage payments, so Diane foreclosed on the property and obtained a writ of possession from a justice of the peace in 2008. Upon execution of the writ of possession, Diane noticed that the house was "totally uninhabitable" because it was

> torn up. There were no kitchen cabinets. There were no bathroom cabinet[s].[7] There were no appliances, with the exception of the refrigerator that I'm assuming belonged to him, because it was not in the house when my mother and father lived there.
>     The cabinets in the bathrooms were torn out, the sink in the kitchen, all the kitchen cabinets. The oven was on the -- out in the driveway. The countertops were out on the driveway. The showerheads were gone. The smoke detectors were gone. The closets had been stripped of their shelving. I don't know what it looked like after the doctor took possession in '04, but when my parents lived there, the closets had some nice built-ins; they were all removed. There was a nice built-in in the living room; that was removed, it was set on the floor, it was like a seating area, as well as the upper bookcases were removed. There was a nice built-in desk in the living room; that had been removed.[8]

---

[6] Joseph and Vlastie are now dead; Diane Barfield, their daughter and the executrix of their estate, and Danny Barfield (Diane's husband) testified at the restitution hearing.

[7] Danny testified that appellant informed him that he sold the cabinets that he took from the house.

[8] The State introduced photographs that support Diane's testimony about the damage to the house. Diane also described that a staircase's carpet had been

Diane contacted the police about the damage to the house. An individual who had offered to pay $238,000 for the house before seeing the damage offered only $208,000 and then $200,000 after seeing the damage, and the sale to that buyer failed because appellant filed two lis pendens against the property.[9] Another buyer eventually bought the house for $150,000. Diane testified, "I had gotten a bid to repair the damages, and it was over $55,000."

From 2007 to 2008, the Denton County Appraisal District's value of the property decreased from $256,011 to $120,000 as a direct result of the damage. A probate court awarded the Mareks' estate a civil judgment of about $60,000 against appellant a few weeks before the restitution hearing, but appellant, who now lives in Iowa, had not paid that judgment at the time of the hearing.[10]

**Criminal responsibility**

---

removed and doors had been damaged.

[9] A lis pendens is a document that prevents a party to litigation from transferring an interest in real property until the litigation is resolved. *See* Tex. Prop. Code Ann. § 12.007 (Vernon Supp. 2009); *World Savings Bank, F.S.B. v. Gantt*, 246 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The record indicates that the lis pendens issue was not resolved when the potential buyer made his final $200,000 offer, which the Barfields did not respond to for reasons not revealed by the record, because the lis pendens were still in effect in March 2009 when the individual who eventually purchased the property was preparing to purchase it.

[10] Diane testified that if the trial court awarded restitution, she would apply appellant's restitution payment to the amount awarded in the civil suit.

In his first issue, appellant argues that restitution is improper for the sole reason that he owned the house at the time it was damaged and that he therefore cannot be criminally responsible under the penal code's criminal mischief provision. The penal code states that a person commits criminal mischief when the person, "without the effective consent of the owner," "intentionally or knowingly damages or destroys the tangible property of the owner." Tex. Penal Code Ann. § 28.03(a)(1).

We cannot agree with appellant's position that he is not criminally responsible under this statute. The evidence shows that foreclosure occurred on May 6, 2008; a document from the Denton Central Appraisal District shows that Diane (as executrix of the estates) bought the property at a foreclosure sale on that date. Although Diane testified that she did not know whether the damage to the house occurred before or after foreclosure, the indictment alleged that Diane was the owner of the house during appellant's continuing course of conduct in damaging the house that occurred from approximately May 30, 2008 to June 3, 2008. Appellant pled guilty to the indictment's allegations and judicially confessed that he "did unlawfully commit the said offense . . . on the date alleged in the charging instrument." "There is no dispute that the appellant was criminally responsible for the [criminal mischief] to which he pleaded [guilty]." *See Campbell*, 5 S.W.3d at 697; *Chindaphone v. State*, 241 S.W.3d 217, 219 (Tex. App.—Fort Worth 2007, pet. ref'd) (stating that a "judicial confession, standing alone, is sufficient to sustain a conviction upon a guilty plea"); *Garcia v. State*, 694 S.W.2d 583, 585 (Tex. App.—Corpus Christi 1985, no

7

pet.) (holding that a guilty plea and a judicial confession, among other evidence, supported a restitution order). Therefore, we hold that appellant is criminally responsible for the offense that he pled guilty and judicially confessed to and that the trial court's restitution order is not improper on that basis.[11] We overrule appellant's first issue.

**Appellant's intent and involvement in damaging the property**

In his second issue, appellant contends that the evidence is legally insufficient to support the trial court's restitution order. He does not specify how the evidence is insufficient other than by stating that "no rational fact finder could have found for restitution" and that intent is "an essential element of the offense of criminal mischief." In his third issue, he asserts that the evidence is factually insufficient but does not specify how it is insufficient other than by stating, "In the case at bar, the factfinder was presented with a question about whether the appellant was involved in damaging the property."

Appellant's indictment alleges that he "intentionally or knowingly damage[d] or destroy[ed] tangible property." We conclude that appellant's judicial confession

---

[11] To the extent that appellant's argument that he is not criminally responsible is an attempt to invalidate his guilty plea, we overrule the argument because the trial court's amended certification of his right of appeal states only that he may appeal the trial court's restitution order, not any other part of the court's proceedings. *See* Tex. R. App. P. 25.2(a)(2), (d), (f); *Goyzueta v. State*, 266 S.W.3d 126, 136 (Tex. App.—Fort Worth 2008, no pet.) (declining to address an issue that was not within the scope of the trial court's certification of the appellant's right of appeal).

to this indictment provides sufficient evidence of his intent and involvement in damaging the property. *See Ramirez v. State*, 139 S.W.3d 731, 732–33 (Tex. App.—Fort Worth 2004, pet. ref'd) (explaining that the appellant "testified by means of his written judicial confession that he committed each and every allegation in the indictment" and that the judicial confession therefore "provided sufficient evidence to support his conviction"); *see also Pigg v. State*, No. 03-07-00181-CR, 2007 WL 2462036, at *2 (Tex. App.—Austin Aug. 31, 2007, no pet.) (mem. op., not designated for publication) (holding that a judicial confession along with a presentence investigation report comprised a sufficient factual basis for a restitution award). Thus, we hold that the trial court did not abuse its discretion by signing the restitution order, and we overrule appellant's second and third issues.[12]

---

[12] We note that appellant's issues each assert that the trial court erred by ordering restitution; none of the issues expressly challenge the trial court's calculation of the $55,000 amount of restitution.

**Conclusion**

Having overruled all of appellant's issues, we affirm the trial court's judgment.


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 10, 2010