**HANSON BUSINESS PARK, L.P., Appellant,**

v.

**FIRST NATIONAL TITLE INSURANCE COMPANY, Appellee.**

No. 05–05–01336–CV.

Court of Appeals of Texas, Dallas.

Dec. 12, 2006.

Jeff Rusthoven, Scott Griffith, Griffith & Nixon, P.C., Dallas, for Appellant.

Richard Dwayne Danner, Irving, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice FITZGERALD.

Appellant Hanson Business Park, L.P. appeals the trial court's order granting appellee First National Title Insurance Company's motion for summary judgment and denying appellant's cross motion for summary judgment. For the reasons discussed below, we affirm the trial court's order.

Appellant purchased three tracts of land in Irving, Texas. Appellee provided a title insurance policy covering the tracts. Some time after the purchase, appellant learned that a portion of one of the tracts lies in a flood plain. Appellant made a claim under the title insurance policy; appellee denied the claim. Appellant sued appellee for breach of the policy, unfair settlement practices, and breach of the duty of good faith.

Appellee filed a summary judgment motion, arguing that appellant's claims were not covered by the title insurance policy. Appellant responded and filed its cross motion for summary judgment, arguing that the flood plain designation constitutes a defect in title which is covered by—and not excluded from—the title insurance policy. The trial court granted appellee's motion and denied appellant's cross motion. The single legal question underlying the parties' cross motions is now before this Court: is appellant's claim covered under the title insurance policy?

■ The standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence on appeal and determine all questions presented. *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997).

■ A title insurance policy is a contract of indemnity, imposing a duty to indemnify the insured against losses caused by defects in title. *Chicago Title Ins. Co. v. McDaniel*, 875 S.W.2d 310, 311 (Tex.1994). The policy governing this case provides coverage for any loss or damage caused by "[a]ny defect in or lien or encumbrance on the title."

■ Appellee's motion successfully argued that the flood-plain designation of a portion of the property is not a matter that "would be shown in the regular transfers of title." *See* Tex.Code Civ. Prac. & Rem. Ann. § 16.021(4) (Vernon 2002) (defining "title" to mean "a regular chain of transfers of real property from or under the sovereignty of the soil"). Appellee's motion argued the property's flood-plain status, rather than being a matter affecting title, is a condition of the land that was "created by nature and merely designated by FEMA." Thus, according to appellee's motion, the property's status is distinguishable from title defects or encumbrances, which are "created by parties that own a right or interest in the affected property."

■ Appellant's cross motion argued the flood-plain status was indeed a title defect or encumbrance. Appellant relies on cases that link the concepts of defect and marketable title. For example, appellant cites the case of *Alling v. Vander Stucken*, 194 S.W. 443 (Tex.Civ.App.-San Antonio 1917, writ ref.), which states, in the context of specific performance of a contract for purchase of land:

A title that is open to reasonable doubt, such as would affect the market value, is not a marketable title.... By a marketable title is meant one reasonably free from doubts that would affect the market value of the land; a title which a reasonably prudent man, in the light of all the facts and their legal effect, would accept as being satisfactory.

*Id.* at 444 (citations omitted). Likewise, appellant relies on *Tex. Auto Co. v. Arbetter*, 1 S.W.2d 334 (Tex.Civ.App.-San Antonio 1927, writ dism'd), citing the portion of that opinion that avers:

The term "marketable title," when applied to real property, means one reasonably free from such doubt as would affect the market value of the estate; one which a prudent man with knowledge of all the facts and their legal bearing would be willing to accept.

*Id.* at 336. Appellant reads these and similar cases to state that any condition that decreases the price a seller of property can recover amounts to a defect in the property's marketable title. Indeed, appellant argues that "any error, omission, or irregularity that affects the value of the land" amounts to a defect in title. A thorough reading of the cases, however, proves appellant's understanding is incorrect. The cases' discussions of "marketable title" actually address whether the property can be sold at all, not whether the property will fetch a lesser price because of some condition on the land. For example, following the above quote, the court in *Arbetter* goes on to explain:

In a suit by the vendor to enforce performance of a contract for the sale of land, the vendee will not be compelled to accept the title unless it is a marketable one, that is, one which will not expose him to litigation. To force upon the vendee a title which he may be compelled to defend in the courts is to impose upon him a hard bargain; and this a court of equity, in the exercise of its discretion, will refuse to do, irrespective of the question whether the title is actually good or bad.... [I]f there be any reasonable chance that some third person may raise a question against the owner of the estate, after the completion of the contract, the title will be deemed unmarketable.

*Id.* (citations omitted). The cases cited by appellant establish that the concept of "title" speaks to ownership of rights in property, not to the condition or value of the property. Thus, a defect in, or encumbrance on, title (such as would trigger coverage under a title insurance policy) must involve a flaw in the ownership rights in the property. *See, e.g., Rosenfield v. Pollock Realty Co.,* 416 S.W.2d 833, 836–37 (Tex.Civ.App.-Dallas 1967, no writ) (water diversion agreement represented outstanding interest in land and encumbrance on title, because previous owner had "parted with valuable rights"). Appellant's argument that "any error, omission, or irregularity that affects the value of the land" amounts to a defect in title is not a correct understanding of Texas law.

The summary judgment record raises no issue of a flaw in appellant's ownership rights in the property purchased. We conclude the flood-plain status of that property is a defect, if at all, only in the condition of the property. We refuse to equate a defect in the condition of the property with a defect in title to the property. We conclude appellant's claim was not covered under the title insurance policy, and appel-lee was entitled to judgment as a matter of law. Thus, the trial court correctly granted summary judgment for appellee and denied summary judgment for appellant.

We overrule appellant's single issue, and we affirm the trial court's order.