**AFFIRM; Opinion Filed May 1, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00036-CV

### MARTIN E. McGONAGLE, M.D. AND MARY E. McGONAGLE, Appellants
### V.
### STEWART TITLE GUARANTY COMPANY AND STEWART TITLE COMPANY
### D/B/A CENTRAL TEXAS TITLE, Appellees

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. Dc-11-06872**

## OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Evans

Martin E. McGonagle, M.D. and his wife, Mary E. McGonagle appeal the trial court's summary judgment on their claims against Stewart Title Guaranty Company and Stewart Title Company d/b/a Central Texas Title for breach of contract, negligence, gross negligence, and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act. Bringing three issues, the McGonagles generally contend the trial court erred in dismissing their claims. Finding no merit in the McGonagles' arguments, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

The McGonagles' claims arise out of their purchase of a piece of property in downtown Granbury, Texas. The property was subject to a dedication instrument stating that (1) "the property owner shall move at their sole expense, the bungalow currently on-site to a location

within the Historic Overlay, upon approval and acceptance of the relocation by the Historic Commission;" and (2) "the owner will obtain all necessary approvals through the City of Granbury, including a Certification of Appropriateness (C. of A.) from the Historic Commission prior to beginning any new construction." The dedication instrument further stated that the agreement "shall be tied to the property and bind the current property owner, its successors and assigns."

Martin McGonagle testified that he was aware of the dedication instrument before purchasing the property and that he tried to have it removed before closing on the purchase. McGonagle also stated he told the seller that he would not close on the purchase unless the dedication instrument was removed. According to McGonagle, the seller told him that he would "take care of" the dedication instrument and, shortly before the closing, the seller stated that the instrument had been "taken care of." Despite these alleged representations by the seller, the sales contract signed by the McGonagles specifically stated that the "Granbury Historical Society Agreement"[1] was included in the purchase and would belong to the buyer. A copy of the dedication instrument was attached to the sales contract.

At the closing, the McGonagles also purchased a title insurance policy issued by Stewart Title Guaranty Company. The policy contained several exclusions from coverage including "[d]efects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the Insured Claimant." Also excluded was "[t]he refusal of any person to purchase, lease or lend money on the estate or interest covered hereby . . . because of Unmarketable Title."

Schedule B of the policy contained exceptions from coverage. The first exception stated that the policy did not insure against loss or damage arising by reason of itemized "restrictive covenants of record." The exception further stated that Stewart Title Guaranty "must either

---

[1] The McGonagles do not dispute that the Granbury Historical Society Agreement is the dedication instrument.

insert specific recording data or delete this exception." The exception was struck through in its entirety and the word "Deleted" was typed in the space beneath.

At the closing, Martin McGonagle reviewed the Commitment for Title Insurance prepared by Stewart Title Company d/b/a Central Texas Title. The title commitment included Schedule B. According to McGonagle, he interpreted the deletion of the first exception from coverage in Schedule B to mean that the dedication instrument had been removed and no longer applied to the property. McGonagle stated that he believed the deleted provision confirmed the seller's statement to him that the instrument had been "taken care of."

Sometime after purchasing the property, the McGonagles attempted to resell it. They allege they were unable to do so because the property was still subject to the dedication instrument. The McGonagles brought suit against the seller for misrepresentation. They then brought this separate suit against Stewart Title Guaranty and Stewart Title for breach of contract, negligence, gross negligence, and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act.[2] Both Stewart Title Guaranty and Stewart Title filed motions for traditional summary judgment contending the McGonagles' claims failed as a matter of law because there was no coverage under the title policy for losses allegedly caused by the dedication instrument and neither company made any misrepresentations about the property or the title policy. The trial court granted the motions and the McGonagles brought this appeal.

## ANALYSIS

We review a trial court's summary judgment de novo. *See Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 508 (Tex. 2010). The party moving for a traditional summary judgment has the burden of establishing there are no genuine issues of material fact and that it is entitled to

---

[2] The McGonagles also alleged claims for violations of the Unfair Claims Settlement Practices Act and breach of the duty of good faith and fair dealing. These claims were severed from this action and are not the subject of this appeal.

judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). In conducting our summary judgment review, we consider all the evidence in the light most favorable to the non-movant, indulging all reasonable inferences in its favor. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985).

In this case, all of the McGonagles' claims are based on two allegedly wrongful acts by Stewart Title Guaranty and/or Stewart Title: (1) denying coverage for losses caused by the dedication instrument and (2) misrepresenting the state of the title to the property and the extent of coverage provided by the title insurance policy. We address each in turn.

### A. Denial of Coverage

The McGonagles argue that the losses they suffered as a result of the dedication instrument fall within the specifically enumerated list of covered risks in the policy. In the alternative, they argue their losses are covered because a risk such as the dedication instrument is not specifically excluded. Under the "COVERED RISKS" section of the policy, the contract states that, subject to the exclusions from coverage, exceptions from coverage contained in Schedule B, and the conditions set forth in the policy, Stewart Title Guaranty insured the McGonagles against loss or damage incurred by reason of "[a]ny defect in or lien or encumbrance on the Title." The policy further covered "[l]ack of good and indefeasible Title."[3] "Title" was defined in the policy to mean "the estate or interest described in Schedule A." Schedule A set forth the estate as a fee simple.

In an insurance contract dispute, the initial burden falls on the insured to establish coverage under the terms of the policy. *See Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 188 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). As the movant

---

[3] The policy contained ten enumerated risks. The remainder are not at issue in this case.

for summary judgment on this issue, however, Stuart Title Guaranty had the burden to show that no material fact issue existed and that it was entitled to judgment as a matter of law. *Id*. In its motion for summary judgment, Stewart Title Guaranty contended there was no coverage for the claims at issue because the dedication instrument had no effect on the McGonagles' ownership rights in the property. It argued the evidence showed the McGonagles purchased and received a fee simple interest in the property and nothing in the dedication instrument affected that ownership interest or the ability of the McGonagles to pass that interest on to a subsequent purchaser.

A title insurance policy is a contract of indemnity that imposes a duty on the insurance company to indemnify the insured against losses caused by defects in title. *See Hanson Bus. Park, L.P. v. First Nat'l Title Ins. Co.*, 209 S.W.3d 867, 869 (Tex. App.—Dallas 2006, pet. denied). The alleged defect must involve a flaw in the ownership rights of the property to trigger coverage. *Id*. at 870. An irregularity that merely affects the value of the land, but not the ownership rights, is not a defect in title. *Id*.

The McGonagles contend the dedication instrument falls within the scope of coverage because it is "a covenant, creating an encumbrance, which affects title." This argument is not well taken. An "encumbrance" is a tax, assessment, or lien on real property. *See* TEX. PROP. CODE ANN. § 5.024 (West 2004). The dedication instrument neither involves nor creates a tax, assessment, or lien. Although a few cases have noted that it is possible for a covenant to cloud title, the covenant must pertain to the ownership interest. *See First Am. Title Co. of El Paso v. Prata*, 783 S.W.2d 697, 702–03 (Tex. App.—El Paso 1989, writ denied). The McGonagles fail to show how any of the requirements set forth in the dedication instrument impact their fee simple ownership interest in the property.

The McGonagles argue at length that the dedication instrument affects their ability to sell the property and, therefore, amounts to a defect in title. We addressed this same argument in *Hanson Bus. Park, L.P. v. First Nat'l Title Ins. Co.*, 209 S.W.3d at 869–70. As stated in *Hanson*, "the concept of 'title' speaks to ownership of rights in property, not the condition or value of the property." *Id*. at 870. The term "marketable title" goes to whether the property interest can be sold at all, not whether it will fetch a lesser price because of some condition limiting its use. *See id*. at 869. In this case, although the dedication instrument imposes certain burdens on the land owners that may lessen the market value of the property, it does not vest any ownership interests in the property in any other party that would affect the McGonagles' title. Accordingly, the dedication instrument does not fall within the title policy's covered risks.

Even if the dedication instrument could be considered a defect in title, it is a defect that the McGonagles assumed when they signed the purchase contract and is, therefore, excluded from coverage under the terms of the title policy. The purchase contract specifically stated that the dedication instrument was included in the sale and would belong to the buyer. The instrument was attached to the purchase contract and stated that it "shall be tied to the property and bind the current property owner, its successors and assigns." The title policy excludes all defects or other matters ". . . assumed or agreed to by the Insured Claimant."

The McGonagles assert that they did not assume or agree to the dedication instrument because they believed it had been removed when they signed the purchase contract. However, one who signs an agreement, even without knowledge of its contents, is presumed to have consented to its terms and is charged with knowledge of the agreement's legal effect. *See First City Mortg. Co. v. Gillis*, 694 S.W.2d 144, 147 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Because the purchase contract specifically incorporated and attached the dedication instrument, the fact that the seller told the McGonagles the instrument had been "taken care of"

does not negate this presumption. A party cannot justifiably rely on oral representations in an arms-length transaction that are directly contradicted by the contract he signs. *See Miller Global Props., LLC v. Marriott Int'l, Inc.*, 418 S.W.3d 342, 347–48 (Tex. App.—Dallas 2013, pet. filed).

The McGonagles argue that the "assumed or agreed to" exclusion requires a showing that the insured intended to acquire the title defect at issue. Such intent is shown if the insured acquires the property with knowledge of the existence and extent of the title defect being assumed. *See Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 868 (5th Cir. 2014). As stated above, when the McGonagles signed the purchase contract, they consented to its terms and were charged with knowledge of the contract's legal effect. The legal effect in this case was the assumption of the dedication instrument. The McGonagles point to no evidence that the purchase contract they signed failed to accurately inform them of the existence and extent of the dedication instrument or the fact that it was still attached to the property. Accordingly, to the extent the dedication instrument could be considered a defect in title, it was expressly assumed by the McGonagles under the purchase contract and is, therefore, excluded from coverage. We resolve the McGonagles' first issue against them.

### B. Alleged Misrepresentation

The McGonagles contend that the deletion of the first exception to coverage under Schedule B constituted a misrepresentation of both the state of the title to the property and the extent of coverage provided by the policy. The exception allowed Stewart Title Guaranty to except from coverage any restrictive covenant of record that it itemized in the space provided. The exception states that the insurer "must either insert specific recording data or delete [the] exception." The exception was struck through and the word "deleted" was typed in the space provided. According to the McGonagles, the deletion of the exception constituted a

representation that either the dedication instrument was no longer attached to the property or that it was not excepted from coverage.

In arguing that the deletion amounted to an affirmative representation that the dedication instrument was no longer attached to the property, the McGonagles rely heavily on the Texas Supreme Court opinion of *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74 (Tex. 1993). In *Garrett*, the supreme court held that a title company made an actionable, affirmative representation to its insured when it inserted the phrase "none of record" in the space provided for itemizing restrictive covenants of record rather than deleting the provision. *See id*. at 76–77. The court concluded that the phrase "none of record" was clearly a representation "that there were no restrictive covenants in the county deed records." *Id*. at 76. The McGonagles attempt to equate the word "deleted" used in their policy with the phrase "none of record" used in the *Garrett* policy. The word "deleted," however, refers solely to the fact that the exception was deleted pursuant to the instructions in the standard form document and cannot be construed to mean anything else. It conveys no information about the existence or non-existence of restrictive covenants. Although the McGonagles may have assumed the provision was deleted because the dedication instrument had been removed, they point to no statements by appellees that the exception was deleted for this reason. The deletion represents only that restrictive covenants of record affecting the title, *if any*, were not excepted from coverage.

The McGonagles next argue that the removal of the exception for restrictive covenants constituted an affirmative representation that the dedication instrument would be a covered risk. But the deleted provision makes no reference to any specific covenant and the exception only impacts restrictive covenants that otherwise fall within the scope of coverage. As discussed above, the dedication instrument at issue does not fall within the scope of coverage because it does not affect the McGonagle's fee simple interest or, alternatively, because the "defect" was

assumed. *See Hanson,* 209 S.W.3d at 870. The removal of the exception cannot create coverage that is not otherwise provided by the policy. Neither can the removal of an exception from coverage mislead the insured that coverage exists when the remainder of the policy indicates otherwise.

The McGonagles suggest that appellees were required to inform them that the dedication instrument was still attached to the property. The only duty of a title insurer is to indemnify the insured against losses caused by a defect in title. *See Chicago Title Ins. Co. v. McDaniel*, 875 S.W.2d 310, 311 (Tex. 1994). Although an insurer cannot misrepresent the state of the title or mislead the insured, it has no duty to point out any outstanding encumbrances. *See Martinka v. Commonwealth Land Title Ins. Co.*, 836 S.W.2d 773, 777 (Tex. App.—Houston [1st Dist.] 1992, writ denied). We have already concluded that nothing in the deletion of the exception for restrictive covenants could be construed as being misleading or a misrepresentation regarding the existence of either the dedication instrument or coverage for the damages it allegedly caused. Accordingly, appellees were under no duty to inform the McGonagles that the instrument was still attached to the property. *Id*. Because the McGonagles' claims for negligence, gross negligence, and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act were all based on the deleted provision allegedly constituting a misrepresentation, we conclude the trial court correctly granted summary judgment in appellees' favor on those claims.

We resolve the McGonagles' second and third issues against them. We affirm the trial court's judgment.

130036F.P05

/David Evans/
_____
DAVID EVANS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARTIN E.McGONAGLE, M.D. AND
MARY E. McGONAGLE, Appellants

No. 05-13-00036-CV      V.

STEWART TITLE GUARANTY
COMPANY AND STEWART TITLE
COMPANY D/B/A CENTRAL TEXAS
TITLE, Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. Dc-11-06872.
Opinion delivered by Justice Evans.
Justices Bridges and Lang participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

      It is **ORDERED** that appellees STEWART TITLE GUARANTY COMPANY AND STEWART TITLE COMPANY D/B/A CENTRAL TEXAS TITLE recover their costs of this appeal from appellants MARTIN E. McGONAGLE, M.D. AND MARY E. McGONAGLE.

Judgment entered this 1st day of May, 2014.

/David Evans/
DAVID EVANS
JUSTICE