

# NUMBER 13-24-00114-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

FASTRAC ENERGY SERVICES, LLC,                                Appellant,

v.

PEDRO GOMEZ AND DIANA GOMEZ,                              Appellees.

## ON APPEAL FROM THE 103RD DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Cron, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

In this accelerated interlocutory appeal, appellant Fastrac Energy Services, LLC (Fastrac) argues by one issue that the trial court erred in denying its motion to compel arbitration of claims raised in a suit brought by appellees Pedro and Diana Gomez. Because a valid arbitration agreement exists and the Gomezes failed to establish a defense to its enforcement, we reverse and remand.

## I. BACKGROUND

In their original petition, the Gomezes alleged that in 2021 they were solicited at their residence in Los Fresnos by a solar panel salesperson. According to the Gomezes, the salesperson told them that if they agreed to have solar panels installed by Fastrac, they would have reduced electric bills and would receive "a payment from the IRS for the amount of $9,000 to $11,000." The Gomezes stated in their petition that "[they] agreed to sign the contract" based on the salesperson's representations, and that the solar system was installed about a month later.

According to the petition, the system initially did not work due to a faulty inverter. Eventually, a new inverter was installed and the system began working, but after "a reduction in their [electric] bill for a few months, . . . a short time later their bill doubled from approximately $300 a month to $600 per month." The Gomezes then contacted "their energy provider, Magic Valley," whose employees informed them that "the solar system was not working properly or not working at all." The Gomezes claimed that they "never received the benefits that they were promised by purchasing the solar system." The Gomezes raised claims against Fastrac for fraud and violations of the Texas Home Solicitation Act (THSA). *See* TEX. BUS. & COM. CODE §§ 601.052–.201.[1] They requested damages, attorney's fees, and rescission of the contract.[2]

Fastrac answered the suit and moved to compel arbitration under the Texas Arbitration Act (TAA). *See* TEX. CIV. PRAC. & REM. CODE § 171.021(a). The motion pointed

---

[1] The Gomezes also sued GoodLeap, LLC, which financed the transaction. GoodLeap is not a party to this appeal.

[2] In a first amended petition, the Gomezes added claims for violations of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.46(a), and breach of contract. However, those claims were omitted from the Gomezes' second amended petition filed on January 29, 2024, which was their live pleading at the time the judgment on appeal was rendered.

to a broad arbitration clause contained in the "Home Improvement Contract" governing the transaction.[3] Fastrac attached a copy of the contract dated July 8, 2021, bearing the electronic signatures of Pedro and Fastrac's president, along with an "Envelope Report" purportedly confirming that the signatures were genuine.[4] In response to the motion to compel, the Gomezes argued the contract was inadmissible hearsay because it was not accompanied by a business records affidavit. They also filed an unsworn declaration by Pedro stating in relevant part: "I was not present in Cameron County when [Fastrac]'s salesperson came to my house on or about July 8, 2021"; "I have never met with any representative of [Fastrac]"; and "I have never signed my name by hand or electronically to any contract between myself and [Fastrac]."

In an amended response, the Gomezes withdrew their hearsay objection and instead asserted that Fastrac "produced no evidence that the Gomez[es] agreed to

---

[3] The clause states as follows, in its entirety:

ANY DISPUTE, CONTROVERSY, OR CLAIM ARISING OUT OF OR RELATING TO THIS CONTRACT, OR THE BREACH THEREOF, SHALL BE SETTLED BY BINDING ARBITRATION AND JUDGMENT UPON THE AWARD RENDERED BY BINDING ARBITRATION UNDER THE RULES AND REGULATIONS OF THE AMERICAN ARBITRATION ASSOCIATION. Any decision or award rendered in any arbitration may be made a judgment by any court of competent jurisdiction. If any party refuses or neglects to appear or participate in such arbitration hearings, such acts shall be conclusively deemed an act of bad faith, and the arbitrator(s) are empowered to decide the controversy in accordance with whatever evidence is presented, and are authorized to award reasonable costs and damages, including those for bad faith and expenses and reasonable attorney's fees. The parties hereby waive their right to bring any legal action and understand they are giving up their rights to discovery and appeal. If any party refuses to submit to arbitration after agreeing to this provision, they may be compelled to arbitrate under the authority of the Texas Rules of Civil Procedure. If any party to this Contract, including any agent, shall institute any legal action against any other party to this Contract, the prevailing party shall be entitled to court costs and reasonable attorney's fees in addition to any other relief which may be granted. Further, Purchaser agrees not to publicly disparage Contractor without first informing Contractor of any complaints and allowing 10 business days for the Contractor to initiate dispute resolution procedures or otherwise resolve Purchaser's complaint(s).

[4] The contract reflects that RES Solar Nation was the "provider" of the solar panels and Fastrac was the installer. In their second amended petition, the Gomezes added RES Solar Nation and its owner as defendants. They are not parties to this appeal.

arbitration, or even a contract." They further asserted that the arbitration clause in the "Home Improvement Contract" is procedurally and substantively unconscionable.

A hearing on the motion to compel was set for January 30, 2024. The day before the hearing, Fastrac filed a reply arguing that: (1) the Gomezes admitted "the existence of the binding [c]ontract" in their pleadings; (2) "[a]dditional security measures verify the authenticity of [Pedro]'s signature on the [c]ontract"; and (3) there is no evidence of procedural or substantive unconscionability. Fastrac further argued that Diana should be compelled to arbitrate, despite the fact that she did not sign the contract, because she "seeks direct benefits from its terms." It attached evidence including an affidavit by Stephanie Frugé, its Vice President of Business Operations, detailing the process by which it obtains electronic signatures for its contracts. Frugé stated in relevant part:

6.  "Fastrac is a solar installation company. Fastrac uses a prominent third-party platform called Enerflo that companies in the solar panel industry frequently use to combine solar dealers and installers into one united platform.

7.  "After receiving consent to enter into an electronic transaction, Fastrac enters into electronic contracts with its customers using Enerflo's secure and proprietary Docflo platform. Fastrac offers its customers the contract in either Spanish or English.

8.  "The Docflo platform is compliant with the Federal Electronic Signatures in Global and National Commerce Act (also known as the ESign Act) and employs various security procedures for the purpose of verifying that an electronic signature, record, or performance is that of a specific person and/or for detecting changes or errors in the information in an electronic record itself. Specifically, Docflo's security procedures include, but are not limited to, the following: A requirement that the sender and recipient enter their unique email address; assignment of a unique identifier to an electronic document and then tying that identifier to the user's actions; maintaining a secure system for tracking and storing user activities; identification of the signer's IP address; identification of the device used to electronically sign the document; and delivery of the completed electronic record to a secure storage platform.

4

9. "After the electronic record is signed, Docflo provides Fastrac an envelope report containing: The name of the document; the document's unique identifier; a time stamp of when the document was created; the signer's name; the signer's e-mail address; an identifier unique to the signer, which links to the signer's signature on the document itself; the IP address used by the signer to execute the document; and a date and time stamp of when the document was executed by the signer.

10. "Fastrac also undertakes additional security measures to verify that an electronic signature, record, or performance is that of a specific person by conducting an independent contract validation process, which includes: a phone call with the client to confirm the correct email address, obtain an acknowledgement of the contract itself, and review of some of the contract's terms.

11. "All of the security protocols described above were implemented in Fastrac's transaction with Plaintiffs.

12. "Plaintiffs and Fastrac consented to enter into an electronic transaction. Plaintiffs were offered the choice of receiving the Contract in English or Spanish. Plaintiffs chose to receive the Contract in English.

13. "Fastrac and Plaintiffs thereafter executed the Contract on July 8, 2021. After executing the Contract, Fastrac received the Envelope Report containing the above-described information, which validated Pedro Gomez's signature on the Contract.

14. "The signer ID for Pedro Gomez corresponds with the signer ID on the Contract. The email address provided by Plaintiffs corresponds with the signer's e-mail address. The IP address associated with Pedro Gomez in the Envelope Report traces back to Cameron County, Texas where Plaintiffs live and where the work took place. Fastrac also undertook its additional Contract validation process by conducting a welcome phone call with Diana Gomez to further validate the e-mail address used by Plaintiffs and the Contract itself. The welcome call was conducted entirely in English."

On the morning of the hearing, the Gomezes filed objections to Fastrac's affidavit on grounds that "it contains false information, unsupported general statements, and hearsay." The record contains no ruling on the Gomezes' objections. After the hearing, the trial court denied Fastrac's motion to compel, and this appeal followed. *See id.*

5

§ 171.098(a)(1) (providing that "[a] party may appeal a judgment . . . denying an application to compel arbitration made under [§] 171.021"); *Sporran Kbusco, Inc. v. Cerda*, 227 S.W.3d 288, 290 (Tex. App.—San Antonio 2007, pet. denied) ("A trial court's order denying a motion to compel arbitration, if based on the TAA, is reviewable by interlocutory appeal.").

## II.     MOTION TO COMPEL ARBITRATION

### A.     Applicable Law and Standard of Review

A party seeking to compel arbitration must establish that (1) a valid arbitration agreement exists and (2) the claims fall within the scope of the agreement. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2021); *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020). "Arbitration is strongly favored." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015). Therefore, "once it is established that a valid arbitration agreement exists and that the claims in question are within the scope of the agreement, a presumption arises in favor of arbitrating those claims and the party opposing arbitration has the burden to prove a defense to arbitration," such as unconscionability. *Id.* at 499–500; *see Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (noting the presumption is "strong").

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry*, 551 S.W.3d at 115 (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009)). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002); *Downer v. Aquamarine Operators, Inc.*,

6

701 S.W.2d 238, 241–42 (Tex. 1985). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115. "A trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has clearly abused its discretion." *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding).

"[A]bsent unmistakable evidence that the parties intended the contrary, it is the courts rather than arbitrators that must decide 'gateway matters' such as whether a valid arbitration agreement exists" and "[w]hether an arbitration agreement is binding on a nonparty." *Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 376 (Tex. 2023) (quoting *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005)). "These gateway matters are questions of law that we review de novo." *Id.* (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

## B.    Valid Arbitration Agreement

Fastrac argues that, by producing evidence that Pedro electronically signed the "Home Improvement Contract," it established the existence of a valid arbitration agreement. In their response to the motion to compel and on appeal, the Gomezes claim that Fastrac "did not meet its burden to prove a valid agreement to arbitrate." Following this general position, the Gomezes make various specific arguments in their brief which are unsupported by analysis, legal authority, or reference to the record, including:

> [Neither Fastrac] nor any of its agents can prove i) that Pedro Gomez ever received a copy of the contract, ii) that they communicated with Pedro Gomez at any time, in any manner, or iii) that Pedro Gomez was ever at home at any time on the date he allegedly executed the contract, or iv) that Diana Gomez had authority to act as his agent.

> There was no offer because Pedro Gomez never received a copy of the contract prior to the time he allegedly executed the contract. Because no offer was ever made to Pedro Gomez, he could not have accepted the terms

7

of the alleged agreement.

There was no meeting of the minds between Pedro Gomez and Fastrac because Pedro Gomez never received a copy of the contract.

Pedro Gomez never received the contract, so there was no intent that it was mutual and binding and thus, the contract was never executed or delivered by Pedro Gomez.

These arguments are unavailing. Once parties have agreed to conduct a transaction "by electronic means," the Uniform Electronic Transactions Act (UETA) "provides a standard for attributing electronic signatures to them." *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 205 (Tex. 2021) (citing TEX. BUS. & COM. CODE § 322.005(b)). That statute provides that an "electronic signature is attributable to a person if it was the act of the person." TEX. BUS. & COM. CODE § 322.009(a). This "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.* "Security procedure" is defined to include "a procedure that requires the use of algorithms or other codes, identifying words or numbers, encryption, or callback or other acknowledgment procedures." *Id.* § 322.002(13).

> Thus, security procedures may include requiring personal identifying information—such as a social security number or an address—to register for an account; assigning a unique identifier to a user and then tying that identifier to the user's actions; maintaining a single, secure system for tracking user activities that prevents unauthorized access to electronic records; business rules that require users to complete all steps in a program before moving on or completing it; and timestamps showing when users completed certain actions. These examples are illustrative and not exclusive under [§] 322.009(a). The efficacy of the security procedure provides the link between the electronic record stored on a computer or in a database and the person to whom the record is attributed. A record that cannot be created or changed without unique, secret credentials can be attributed to the one person who holds those credentials.

*Aerotek, Inc.*, 624 S.W.3d at 205–06 (citations and footnotes omitted). Frugé stated in her

affidavit, as Fastrac's custodian of records, that the copy of the contract attached to the motion to compel was genuine and that the "Envelope Report" confirmed the authenticity of Pedro's signature thereon. Crucially, she detailed security procedures which Fastrac takes to verify the authenticity of customers' electronic signatures—several of which align with the examples set forth in *Aerotek*—and she specifically confirmed that all of those procedures were implemented during the course of the transaction with the Gomezes.

Frugé's testimony regarding security measures is not controverted by any other evidence in the record. And Pedro never filed any verified pleading denying that he executed the contract. *See* TEX. R. CIV. P. 93(7). In his unsworn affidavit, he denied electronically signing the contract; however, he did not refute Frugé's assertions regarding the security procedures used in the transaction, nor did he deny that he agreed to conduct the transaction "by electronic means." *See* TEX. BUS. & COM. CODE § 322.005(b) ("This chapter applies only to transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct.").[5]

In any event, Pedro's unsworn, self-serving denials are insufficient to rebut the sworn testimony of Frugé establishing that the contract complied with UETA. *See CHG Hosp. Bellaire, LLC v. Johnson*, 644 S.W.3d 188, 189 (Tex. 2022) (holding that appellee's "sworn testimony that she did not recall electronically acknowledging the arbitration

---

[5] The Gomezes assert in their brief that "[neither] Frug[é] nor any Fastrac employee or agent contacted Pedro Gomez at any time, so Stephanie Frug[é]'s affidavit is false and should be struck" as a sanction. *See* TEX. R. CIV. P. 13. The mere fact that Pedro may have controverted some of Frugé's testimony in his unsworn declaration does not mean that the affidavit is false or brought in bad faith. Accordingly, we deny the Gomezes' request.

agreement at issue" failed to create a fact question as to its validity); *Aerotek, Inc.*, 624 S.W.3d at 206–09 (concluding, where employer's representative testified that "it was impossible to complete [its electronic] hiring application without signing [a document containing an arbitration clause]," that employees' "[m]ere denials" that they signed the document "do not suffice" to create a fact issue); *Solcius, LLC v. Meraz*, No. 08-22-00146-CV, 2023 WL 2261414, at *5 (Tex. App.—El Paso Feb. 27, 2023, no pet.) (mem. op.) ("[A] party seeking to avoid the agreement cannot do so by submitting an affidavit merely denying that he signed the agreement, as such affidavits are nothing more than mere arguments to avoid an agreement and are insufficient to cast doubt on an otherwise reliable agreement."); *Knox Waste Serv., LLC v. Sherman*, No. 11-19-00407-CV, 2021 WL 4470876, at *9 (Tex. App.—Eastland Sept. 30, 2021, no pet.) (mem. op.) ("*Aerotek* expressly holds, as a matter of law, that an affidavit merely denying the fact of whether a party signed the agreement is no evidence of the arbitration agreement's invalidity."); *Fries Rest. Mgmt., LLC v. Silva*, No. 13-18-00596-CV, 2020 WL 4381994, at *5 (Tex. App.—Corpus Christi–Edinburg July 30, 2020, pet. denied) (mem. op.) (holding, where evidence showed "it was impossible for an employee to be added to payroll without signing the agreement to arbitrate," that employee's sworn denial that she signed the agreement did not create a fact issue as to its validity); *see also Hou. ANUSA, LLC v. Shattenkirk*, 693 S.W.3d 513, 519 (Tex. App.—Houston [14th Dist.] 2023, no pet.) ("When a party has presented evidence conclusively establishing the efficacy of the security procedures utilized to obtain the other parties' signature on an electronic contract and the opposing party has failed to come forward with any evidence of fraud or lack of reliability with respect to those procedures, a court has no choice but to enforce the contract.").

10

Finally, as Fastrac notes, the Gomezes conceded in their live petition that "[b]ased on the representations made by the salesperson, [they] agreed to sign the contract" and that the contract "was executed by [them]" on July 8, 2021. These are judicial admissions which preclude the Gomezes from challenging the validity of their execution of the contract. *See Amazon.com Servs., LLC v. De La Victoria*, 711 S.W.3d 250, 256–57 (Tex. App.—Houston [14th Dist.] 2024, no pet.) ("The elements required for a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery."); *CJE Constr., LLC v. Krynicki*, No. 13-24-00308-CV, 2025 WL 1661992, at *3 (Tex. App.—Corpus Christi–Edinburg June 12, 2025, no pet.) (mem. op.) ("If a party admits to signing a document, the party is barred from disputing the document's authenticity."); *see also Holt Tex., Ltd. v. Rubio*, No. 13-19-00206-CV, 2020 WL 1181253, at *2–3 (Tex. App.—Corpus Christi–Edinburg Mar. 12, 2020, no pet.) (holding that failure to authenticate two signatures on the agreement was not a basis to deny the motion to compel arbitration because of the plaintiff's judicial admission as to which two parties signed the agreement); *Gracepoint Holding Co. v. FJR Sand, Inc.*, No. 01-19-00574-CV, 2020 WL 61594, at *4 (Tex. App.—Houston [1st Dist.] Jan. 7, 2020, no pet.) (mem. op.) (holding that defendant moving to compel arbitration did not need to authenticate the copy of the arbitration agreement because of judicial admissions made by the plaintiff).

We conclude that the evidence established the existence of a valid arbitration agreement.

## C.     Direct-Benefits Estoppel

Fastrac further argues that Diana is bound by the contract and its arbitration clause, even though she did not sign the contract, because she sought and received direct benefits from the contract. We agree.

"[N]on[-]parties may be bound to an arbitration clause when the rules of law or equity would bind them to the contract generally." *Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 532 (Tex. 2023) (quoting *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 129 (Tex. 2005) (orig. proceeding)). For example, "[u]nder 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *Id.* at 533 (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding)). "A non[-]signatory can seek the benefits of a contract either by suing based on the contract, or by conduct that 'deliberately seeks and obtains substantial benefits from the contract itself.'" *Id.* (first citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) (orig. proceeding); and then quoting *Weekley Homes*, 180 S.W.3d at 132). "If a non[-]signatory seeks the benefits of a contract with an arbitration clause, then the non[-]signatory must arbitrate all claims that fall within the scope of that arbitration clause." *Id.*

"[W]hether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading." *Weekley Homes*, 180 S.W.3d at 131–32. Here, although the Gomezes abandoned their breach of contract claim, their live claims for fraud and THSA violations are "based" on the contract in that Fastrac's alleged liability arises from it and must be determined by reference to it. *See*

*Lennar Homes*, 672 S.W.3d at 377 ("When the alleged liability arises from the contract or must be determined by reference to it, equity prevents the non-signatory plaintiff from avoiding an arbitration clause that was part of that contract." (internal alterations omitted))*.* Moreover, the Gomezes admitted in their live pleading that they both actively sought to obtain benefits under the contract, including having the inverter repaired or replaced. *See Weekley Homes*, 180 S.W.3d at 132 (noting that "a nonparty may seek or obtain direct benefits from a contract by means other than a lawsuit" and "a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself"). And as noted, the Gomezes unequivocally admitted in their live pleading that they both "signed" and "executed" the contract. *See CJE Constr.*, 2025 WL 1661992, at *3. Under these circumstances, we conclude that Diana is estopped from denying that she is bound by the arbitration agreement.

## D.    Unconscionability

Because the evidence established the existence of a valid arbitration agreement applicable to both Pedro and Diana, the burden shifted to the Gomezes to establish a defense against its enforcement. *See Royston*, 467 S.W.3d at 499. The Gomezes argued in their amended response to the motion to compel that the arbitration clause is unenforceable because it is procedurally and substantively unconscionable.[6]

---

[6] In their brief on appeal, the Gomezes assert, without reference to the record, that "[their] counsel urged the defense of fraud [by non-disclosure] at the motion to compel hearing" and that "[t]he trial court assumedly considered the argument that the contract was procured by fraud and likely denied Fastrac's motion to compel arbitration based on the fraud argument." However, the Gomezes did not raise fraud as a defense to arbitration in any written pleading. Further, the hearing at issue was not evidentiary, and the record contains no evidence supporting a finding of fraud. Finally, "a failure to disclose information is not fraudulent unless one has an affirmative duty to disclose, such as where a confidential or fiduciary relationship exists," *Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 403 (Tex. App.—Houston [1st Dist.] 1996, no writ), and there is no suggestion that such a relationship existed here. Accordingly, the trial court erred if it based its denial of the motion to compel on these grounds.

"A court may not enforce an agreement to arbitrate if the court finds the agreement was unconscionable at the time the agreement was made." TEX. CIV. PRAC. & REM. CODE § 171.022. "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision." *Royston*, 467 S.W.3d at 499 (quoting *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding)). The test for unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank*, 52 S.W.3d at 757. Unconscionability principles are applied to prevent unfair surprise or oppression. *In re Palm Harbor Homes*, 195 S.W.3d at 679; *see In re FirstMerit Bank*, 52 S.W.3d at 757.

In their amended response, the Gomezes alleged in relevant part as follows:

7. The arbitration clause relied on by [Fastrac] is procedurally unconscionable because there was never an agreement to arbitrate by the [Gomezes].

8. The arbitration clause relied on by [Fastrac] is substantively unconscionable because the contract required the [Gomezes] to waive rights that they did not know that they were waiving.

. . . .

19. [Pedro] does not read or write the English language, yet the contract provided by [Fastrac] is only written in English.

20. [Pedro] never received any documents in Spanish, nor were the terms of the arbitration agreement explained to him in Spanish at any time.

Fastrac contends that the Gomezes failed to satisfy their burden to prove unconscionability, and we agree. The only actual evidence offered by the Gomezes was

14

Pedro's unsworn declaration, but he did not attest to the veracity of the specific allegations made in the Gomezes' amended response as set forth above.[7] Instead, the only relevant record evidence—Frugé's affidavit—establishes that the Gomezes "were offered the choice of receiving the Contract in English or Spanish" and "chose to receive the Contract in English." In any event, the mere fact that the agreement is in a language which Pedro claims he cannot read or write does not render it unconscionable. *See Delfingen US-Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 801 (Tex. App.—El Paso 2013, no pet.) ("Illiteracy is not a defense to enforcement of a contract and will not relieve a party of the consequences of the contract."). And given our previous conclusion that the contract was validly executed, the Gomezes' purported lack of knowledge as to its contents is immaterial to the unconscionability analysis. *See McGonagle v. Stewart Title Guar. Co.*, 432 S.W.3d 535, 541 (Tex. App.—Dallas 2014, pet. denied) ("[O]ne who signs an agreement, even without knowledge of its contents, is presumed to have consented to its terms and is charged with knowledge of the agreement's legal effect."); *Turner v. Hendon*, 269 S.W.3d 243, 247–48 (Tex. App.—El Paso 2008, pet. denied) ("Absent proof and determination of mental incapacity, a person who executes a document is presumed to have read and understood it."); *see also EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (per curiam) ("We presume a party . . . who has the opportunity to read an arbitration agreement and signs it, knows its contents.").

The Gomezes have offered no other arguments for why the arbitration clause is unconscionable. We conclude the trial court erred to the extent it denied the motion to

---

[7] We note that Pedro's unsworn declaration was entirely in English and contains no indication that it had been translated.

15

compel on this basis.

### III.  CONCLUSION

For the reasons stated herein, the trial court abused its discretion by denying Fastrac's motion to compel arbitration.[8] *See In re 24R, Inc.*, 324 S.W.3d at 566. We sustain the issue raised on appeal. The trial court's judgment is reversed, and we remand with instructions to grant Fastrac's motion to compel arbitration and for further proceedings consistent with this memorandum opinion.

YSMAEL D. FONSECA<br>
Justice

Delivered and filed on the
5th day of February, 2026.

---

[8] The Gomezes have never disputed that the claims they raise in their live petition "aris[e] out of or relat[e] to" the contract "or the breach thereof." Thus, the claims fall within the scope of the arbitration clause.